IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LEONARD LEWIS, and | ) | |
| TRESSIA LEWIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-00036-CV-W-SWH |
| | ) | |
| POLICE OFFICER VIDAL, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

On November 29, 2005, plaintiffs filed suit in the Circuit Court of Jackson County, Missouri, against Police Officer Vidal. The action was removed to this Court on January 12, 2006. Plaintiff's complaint seeks damages for unconstitutional arrest and conspiracy to commit unconstitutional arrest pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 (Count I–Plaintiff Leonard Lewis; Count II–Plaintiff Tressia Lewis) and excessive use of force and conspiracy to use excessive force during arrest pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 (Count III–Plaintiff Leonard Lewis; Count IV–Plaintiff Tressia Lewis). Pending before the Court is Defendant's Motion for Summary Judgment (doc #24).

I. STANDARDS FOR EVALUATING A MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted when the pleadings and evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); City of Mt. Pleasant v. Associated Elec. Coop., 838 F.2d 268, 273 (8th Cir. 1988). The

nonmoving party may not rest upon allegations or general denials, but must come forward with specific facts to prove that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In doing so, all evidence and inferences therefrom are viewed in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

## II. UNDISPUTED MATERIAL FACTS

The following facts are deemed uncontroverted for purposes of Defendant's Motion for Summary Judgment:

1. Plaintiffs Leonard and Tressia Lewis reside at 6637 Lydia in Kansas City, Missouri. (Defendant's Fact #1)

2. Defendant John Vidal is employed as a Police Officer by the Kansas City, Missouri Police Department. (Defendant's Fact #2)

3. On August 21, 2003, Kansas City Police Officers Goeman and DeFreece stopped plaintiffs' daughter, Nicole Lewis. (Defendant's Fact #3)

4. Officer Goeman and DeFreece believed that Nicole Lewis twice drove by their parked patrol car, on 66th Terrace, at a speed exceeding the speed limit. (Defendant's Fact #4)[1]

5. Nicole Lewis turned off of 66th Terrace, onto Lydia, and stopped her vehicle outside her parents' residence. (Defendant's Fact #5)

6. Officers Goeman and DeFreece followed and pulled directly behind Nicole Lewis' car. (Defendant's Fact #6)

7. As soon as Nicole Lewis' car stopped, she exited the car, and failed to comply with Officer Goeman's order to get back into the car. Then, Nicole reached inside the car. Goeman walked up to Nicole and grabbed her in an effort to keep her from reaching inside her car. (Defendant's Fact #7)

8. Nicole Lewis yelled, cursed and struggled, after Officers Goeman and DeFreece

---

[1]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

2

stopped her. (Defendant's Fact #8)

9. Nicole Lewis spat at Officers Goeman and DeFreece in the course of her arrest. (Defendant's Fact #9)

10. Nicole Lewis' grandparents (the parents of plaintiff Tressia Lewis) live across the street from plaintiffs. (Defendant's Fact #10)

11. Nicole's grandmother (plaintiff Tressia Lewis' mother) called plaintiffs' home and told plaintiff that the police were outside their home with Nicole. (Defendant's Fact #11)

12. Plaintiffs came outside and saw two officers, Goeman and DeFreece, with Nicole. (Defendant's Fact #12)

13. Plaintiffs first walked onto the front porch of their residence. (Defendant's Fact #13)

14. Plaintiffs then walked onto a concrete landing at the foot of the porch, in the direction of the street where Nicole Lewis was being arrested. (Defendant's Fact #14)

15. Plaintiff Tressia Lewis then walked into the street, followed by her husband, plaintiff Leonard Lewis. (Defendant's Fact #15)

16. Plaintiff Tressia Lewis alleges that she walked into the street, in the area of Officers Goeman and DeFreece and Nicole, to calm Nicole. (Defendant's Fact #16)

17. Nicole Lewis continued yelling, cursing and struggling, at the time a paddy wagon arrived. (Defendant's Fact #17)[2]

18. The wagon pulled behind Officer Goeman and DeFreece's patrol vehicle. (Defendant's Fact #18)

19. Nicole Lewis continued yelling, cursing and struggling, as she was lead to the back of the paddy wagon. (Defendant's Fact #19)

20. Nicole Lewis used her feet to step onto, or kick at, the back bumper or back door of the paddy wagon, in an effort to prevent the officers from placing her into the wagon, all the while yelling and being uncooperative. (Defendant's Fact #20)

---

[2]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

3

21. Plaintiffs followed Nicole Lewis and the officers to the back of the paddy wagon as the officers attempted to place Nicole into the wagon, even after being told repeatedly by Officer DeFreece to "step back," and while Officer DeFreece held up his hand and motioned for them to move away from the area. (Defendant's Fact #21)[3]

22. Either Officer Goeman or DeFreece called for back up during the arrest of Nicole Lewis. (Defendant's Fact #22)

23. After or around the time that the paddy wagon arrived at the scene, other patrol vehicles also arrived. (Defendant's Fact #23)

24. Defendant Police Officer John Vidal arrived with his partner, Police Officer Maxfield. (Defendant's Fact #24)

25. Defendant came upon the back of the paddy wagon at the time that officers were attempting to place an uncooperative Nicole Lewis into the wagon. (Defendant's Fact #25)[4]

26. Defendant saw plaintiffs at the back of the paddy wagon, in close proximity to Nicole Lewis and the officers arresting her. (Defendant's Fact #26)

27. Plaintiff Tressia Lewis was within touching distance of Nicole Lewis and the officers arresting Nicole. (Defendant's Fact #27)

28. Plaintiff Leonard Lewis was within five to eight feet of Nicole Lewis and officers arresting Nicole. (Defendant's Fact #28)

29. Other persons in the neighborhood were outside during Nicole Lewis' altercation with police, but none of them were as close to Nicole and the officers, as were plaintiffs. No other persons were as close to the paddy wagon or Nicole's car as were plaintiffs. (Defendant's Fact #29)

30. Plaintiffs were the only people that were immediately behind the officers and Nicole Lewis. (Defendant's Fact #30)

---

[3]The factual references provided by defendant support the fact. While plaintiffs contend that their home videotape refutes the allegations contained in this paragraph, the Court finds that the videotape supports the fact as set forth by defendant.

[4]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

4

31. No other persons in the neighborhood were close enough to be any kind of a potential threat to the officers. (Defendant's Fact #31)

32. Defendant heard both plaintiffs yelling or talking loudly. (Defendant's Fact #32)[5]

33. Defendant heard other officers on the scene telling plaintiffs to get back away from Nicole Lewis and the officers arresting her. (Defendant's Fact #33)[6]

34. Officer DeFreece repeatedly told plaintiffs to "step back" and held up his hand and motioned for them to back away on numerous occasions. (Defendant's Fact #34)[7]

35. Officer Gooch, who drove the paddy wagon, told plaintiffs that they were hindering the officers' attempts to control Nicole Lewis and get Nicole in the wagon. (Defendant's Fact #35)[8]

36. Another officer, possibly DeFreece, told defendant to "get these people back." (Defendant's Fact #36)[9]

37. Defendant physically positioned himself between plaintiffs and Nicole Lewis and the officers arresting Nicole. (Defendant's Fact #37)

38. Defendant told plaintiffs to "get back" approximately four times before plaintiffs took a few steps back. (Defendant's Fact #38)

---

[5]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[6]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[7]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[8]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[9]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

39. Defendant held up his hand, pointing and motioning to plaintiffs to back up onto a porch, when plaintiff Tressia Lewis slapped defendant's hand. (Defendant's Fact #39)

40. Plaintiffs allege that defendant touched Tressia Lewis' abdomen area, and this is why Tressia Lewis slapped defendant's hand. (Defendant's Fact #40)

41. Defendant believed that, at this point, plaintiffs were becoming more hostile. (Defendant's Fact #41)[10]

42. Defendant continued telling plaintiffs to "get back" or "back up" away from the scene as he sprayed plaintiffs one time with pepper spray. (Defendant's Fact #42)[11]

43. The officers arresting Nicole Lewis were focused on Nicole. (Defendant's Fact #43)

44. Defendant did not believe that plaintiffs ever backed away far enough from the officers and Nicole for the arresting officers to do their job safely, and without distraction by plaintiffs. This is why defendant repeatedly told plaintiffs to back away from the area, and sprayed plaintiffs with pepper spray. (Defendant's Fact #44)[12]

45. Officer DeFreece instructed plaintiffs to get back because he and Officer Goeman could not concentrate on controlling Nicole Lewis, who was out of control, while also observing what was going on around them. (Defendant's Fact #45)[13]

46. Having persons so close to an arrest scene is potentially dangerous because the officers arresting Nicole Lewis could not watch plaintiffs and Nicole at the same time; it is not normal or safe for persons to walk so closely behind an officer if the

---

[10] The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[11] The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[12] The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[13] The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

6

officer is taking someone into custody; the arresting officer's hands are occupied with his arrest; and the persons following behind the officer could reach out for the officer's duty weapon, or try to get into the paddy wagon, where a shotgun is stored. (Defendant's Fact #46)[14]

47. Defendant did not know plaintiffs' intentions. (Defendant's Fact #47)[15]

48. Defendant did not know plaintiffs were allegedly attempting to calm Nicole Lewis. Defendant observed two people following the officers with Nicole. (Defendant's Fact #48)[16]

49. After defendant used pepper spray on plaintiffs, other officers handcuffed plaintiffs and placed plaintiffs under arrest. (Defendant's Fact #49)[17]

50. After defendant sprayed plaintiffs with pepper spray, Officer DeFreece told plaintiffs that they "interfered with our arrest." (Defendant's Fact #50)[18]

51. Defendant's partner, Officer Maxfield, wrote a citation to each plaintiff for violating General Ordinance § 50, 44(b), interfering with the arrest of Nicole Lewis. Defendant's name was listed on each of plaintiffs' citations. (Defendant's Fact #51)

---

[14]The factual references provided by defendant support the fact. While plaintiffs admit "as a general proposition" that this fact might be true, plaintiffs contend that this fact is controverted "in the facts of the day." Plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[15]The factual reference provided by defendant supports the fact. While plaintiffs contend that their home videotape refutes the allegations contained in this paragraph, the Court finds that the videotape does not refute the fact as set forth by defendant.

[16]The factual reference provided by defendant supports the fact. While plaintiffs contend that their home videotape refutes the allegations contained in this paragraph, the Court finds that the videotape does not refute the fact as set forth by defendant.

[17]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is "partially" controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

[18]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is "partially" controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

7

52. It is normal practice for one officer to actually write a citation, but for another officer to sign off on the citation. (Defendant's Fact #52)[19]

53. Nicole Lewis was also issued two citations, one each for assaulting Officers Goeman and DeFreece by spitting on them. (Defendant's Fact #53)

54. Plaintiffs and Nicole Lewis were transported together in the paddy wagon to the Kansas City Police Department Headquarters. (Defendant's Fact #54)

55. Headquarters is farther away from plaintiffs' residence than another Kansas City police station. (Defendant's Fact #55)

56. Police policy indicates that belligerent or uncooperative arrests are taken to Headquarters for booking and processing, where more staff are available to deal with them if a problem arises. (Defendant's Fact #56)

57. Plaintiffs bonded out of jail that same night. Plaintiffs claim to have incurred a $600 expense in bonding fees. (Defendant's Fact #57)

58. The pepper spray used by defendant landed on plaintiff Tressia Lewis' eyes. (Defendant's Fact #58)

59. Leonard Lewis turned his head and was sprayed by defendant in the side of the face and neck. (Defendant's Fact #59)

60. Neither plaintiff suffered permanent physical injury as a result of being sprayed one time with pepper spray. (Defendant's Fact #60)

61. Neither plaintiff sought medical treatment as a result of being sprayed with pepper spray. (Defendant's Fact #61)

62. Plaintiff Tressia Lewis suffered no physical pain, or physical injury such as bruising, when defendant allegedly touched her abdomen. (Defendant's Fact #62)

63. Plaintiff Tressia Lewis did not seek medical care as a result of defendant touching her. (Defendant's Fact #63)

64. Neither plaintiff sought counseling by a professional counselor as a result of the incident. (Defendant's Fact #64)

---

[19]The factual references provided by defendant support the fact. While plaintiffs contend that this fact is controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

65. Neither plaintiff has attempted to obtain treatment, or make an appointment with a professional, for their alleged mental harm. (Defendant's Fact #65)

66. Plaintiff Leonard Lewis does claim to have hair loss (alopecia) allegedly as a result of the stress associated with his arrest, saw his family doctor one time regarding the hair loss, and was given a prescription medication for the hair loss. (Defendant's Fact #66)

67. Plaintiff Leonard Lewis suffers no physical pain as a result of the alopecia. (Defendant's Fact #67)

68. The doctor treating plaintiff Leonard Lewis' hair loss did not recommend that Mr. Lewis see a specialist for counseling or stress. (Defendant's Fact #68)

69. Leonard Lewis had no out of pocket expense for the doctor's visit, but did incur a $1 co-pay for the medication. (Defendant's Fact #69)

70. Plaintiff Tressia Lewis has never taken any type of medication as a result of the events of August 21, 2003. (Defendant's Fact #70)

71. Both plaintiffs contend their handcuffs were tight, but neither sought medical treatment, or suffered lasting injury, as a result of being handcuffed. (Defendant's Fact #71)

72. Neither plaintiff suffered bruises or scratches or visible injuries as a result of what occurred on August 21, 2003. (Defendant's Fact #72)

73. Plaintiffs' court date for their citations was continued multiple times. (Defendant's Fact #73)[20]

74. The charges against plaintiffs (not the charges against Nicole Lewis) were eventually dismissed by the prosecutor's office. (Defendant's Fact #74)

75. Prior to August 21, 2003, during the incident outside plaintiffs' residence, plaintiffs and defendant had never encountered one another. (Defendant's Fact #75)

### III. DISCUSSION

---

[20] The factual references provided by defendant support the fact. While plaintiffs contend that this fact is "partially" controverted, plaintiffs fail to provide the Court with specific references to the record upon which they rely. Pursuant to Local Rule 56.1(a), this fact is deemed admitted.

9

A. Unconstitutional Arrest and Conspiracy to Commit Unconstitutional Arrest

Plaintiffs' first claims are for unconstitutional arrest and conspiracy to commit unconstitutional arrest. Plaintiffs allege that defendant had no probable cause to arrest plaintiffs for a violation of General Ordinance § 50, 44(b) or any other ordinance or law. Plaintiffs further allege that no reasonable officer would have believed that probable cause existed to arrest plaintiffs for a violation of General Ordinance § 50, 44(b) or any other ordinance or law. Defendant contends that he is entitled to summary judgment because it is uncontroverted that the arresting officers had probable cause for an arrest.

In Hughes v. Shestakov, 2002 WL 1742666 (E.D. Pa. July 22, 2002), aff'd, 76 Fed. Appx. 450 (3rd Cir. 2003), the court faced issues similar to those presented to this Court. In Hughes, the plaintiff, a participant in a neighborhood altercation, sued police officers under 42 U.S.C. § 1983, claiming false arrest and conspiracy to commit false arrest and use of excessive force and conspiracy to use excessive force. With respect to the false arrest claim, the court found:

> Probable cause exists for an arrest when, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge are "sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Sharrar v. Felsing, 128 F.3d 810, 817 (3rd Cir. 1997). ... In determining whether probable cause exists, the court should assess whether the objective facts available to the arresting officers at the time of the arrest were sufficient to justify a reasonable belief that an offense had been committed. Sharrar, 128 F.3d at 817. Courts apply a common sense approach based on the totality of the circumstances. Paff v. Kaltenbach, 204 F.3d 425, 436 (3rd Cir. 2000).
>
> * * *
>
> Moreover, even if Plaintiff could ultimately prove that the arresting officers erred in their determination that probable cause existed to make the arrest, ... [t]he doctrine of qualified immunity protects government officials from suit when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sharrar v. Felsing, 128 F.3d 810, 826 (3rd Cir. 1997)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 ... (1982)).

10

> Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 ... (1986). In the context of a claim based on probable cause, qualified immunity shields officers from suit for damages if "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." Anderson v. Creighton, 483 U.S. 635, 641 ... (1987). Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. Id. ...

Hughes, 2002 WL 1742666 at *2.

The offense for which plaintiffs were arrested, that is General Ordinance § 50, 44(b), provides:

> A person who shall attempt to prevent any member of the police force from arresting any person, or shall attempt to rescue any person in the custody of a member of the police force ... shall be guilty of a misdemeanor.

General Ordinance § 50, 44(b). Another closely related ordinance, General Ordinance § 50, 44(a), provides:

> Any person who shall in any way or manner hinder, obstruct ... or otherwise interfere with ... any member of the police force, in the discharge of his official duties shall be guilty of a misdemeanor.

General Ordinance § 50, 44(a).

It appears clear from the undisputed material facts that defendant Vidal was not the officer who actually handcuffed plaintiffs and placed them under arrest. (See Fact No. 49, supra) However, defendant Vidal was present at the scene at the time that plaintiffs were arrested and his name is listed on the citations issued to plaintiffs. At the time of the arrest, the following facts and circumstances were within defendant Vidal's knowledge:

1. Defendant came upon the back of the paddy wagon at the time that officers were attempting to place an uncooperative Nicole Lewis into the wagon. (See Fact #25, supra)

2. Defendant saw plaintiffs at the back of the paddy wagon, in close proximity

11

to Nicole Lewis and the officers arresting her. (See Fact #26, supra)

3. Plaintiff Tressia Lewis was within touching distance of Nicole Lewis and the officers arresting Nicole. (See Fact #27, supra)

4. Plaintiff Leonard Lewis was within five to eight feet of Nicole Lewis and officers arresting Nicole. (See Fact #28, supra)

5. Defendant heard both plaintiffs yelling or talking loudly. (See Fact #32, supra)

6. Defendant heard other officers on the scene telling plaintiffs to get back away from Nicole Lewis and the officers arresting her. (See Fact #33, supra)

7. Officer DeFreece repeatedly told plaintiffs to "step back" and held up his hand and motioned for them to back away on numerous occasions. (See Fact #34, supra)

8. Officer Gooch, who drove the paddy wagon, told plaintiffs that they were hindering the officers' attempts to control Nicole Lewis and get Nicole in the wagon. (See Fact #35, supra)

9. Another officer, possibly DeFreece, told defendant to "get these people back." (See Fact #36, supra)

10. Defendant physically positioned himself between plaintiffs and Nicole Lewis and the officers arresting Nicole. (See Fact #37, supra)

11. Defendant told plaintiffs to "get back" approximately four times before plaintiffs took a few steps back. (See Fact #38, supra)

12. Defendant held up his hand, pointing and motioning to plaintiffs to back up onto a porch, when plaintiff Tressia Lewis slapped defendant's hand. (See Fact #39, supra)

13. Defendant continued telling plaintiffs to "get back" or "back up" away from the scene as he sprayed plaintiffs one time with pepper spray. (See Fact #42, supra)

14. Having persons so close to an arrest scene is potentially dangerous because the officers arresting Nicole Lewis could not watch plaintiffs and Nicole at the same time; it is not normal or safe for persons to walk so closely behind an officer if the officer is taking someone into custody; the arresting officer's hands are occupied with his arrest; and the persons following behind the

12

> officer could reach out for the officer's duty weapon, or try to get into the paddy wagon, where a shotgun is stored. (See Fact #46, supra)

The Court finds that these facts and circumstances are sufficient to warrant a prudent officer in believing that the plaintiffs had committed or were committing an offense possibly in violation of General Ordinance § 50, 44(b), and certainly in violation of General Ordinance § 50, 44(a). "[A] claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime." Jaegly v. Couch, 439 F.3d 149, 150 (2nd Cir. 2006)(citing Devenpeck v. Alford, 543 U.S. 146 (2004)). Plaintiffs have not disputed the existence of the evidence upon which the arresting officers made their probable cause determination. Therefore, the Court finds that defendant is entitled to summary judgment that probable cause existed to arrest plaintiffs. See Caldarola v. Calabrese, 298 F.3d 156, 161 (2nd Cir. 2002)("the existence of probable cause is an absolute defense to a false arrest claim").

However, even if plaintiffs could ultimately prove that the arresting officers erred in their determination that probable cause existed to make the arrests, the Court finds that defendant Vidal would be protected from suit by the doctrine of qualified immunity because a reasonable officer could have believed the arrests to be lawful, in light of clearly established law and the information the arresting officers possessed. See Caldarola v. Calabrese, 298 F.3d 156, 162 (2nd Cir. 2002)("in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity").

Plaintiffs attempt to create an issue of fact in their Suggestions in Opposition to Defendant's Motion for Summary Judgment by stating the following:

> Plaintiffs respectfully suggest that material facts are in dispute regarding the arrest of Plaintiffs. Simply stated, Officer Vidal admits that he did not decide to arrest the Plaintiffs for hindering prosecution. Despite that admission, it was his

>name on the ticket as the person who verified the accuracy of the complaint. Vidal
>described on the ticket ... conduct that simply did not occur. Vidal signed as true,
>that both Leonard and Tressia Lewis, "**interfere with the arrest of Lewis, Nicole
>A., by refusing to move for officers knowing that they were being arrested by
>PO Goeman.**" Plaintiffs offer the suggestion to the Court that a police officer who
>signs a ticket knowing it not to be true have [sic] clearly established statutory or
>constitutional rights of which a reasonable person would have known as the
>identified standard in *Harlow*.
>
>\* \* \*
>
>Plaintiffs suggest the defense of qualified immunity is not available to the
>officer. Simply stated, he signed a ticket that he knew was false. ... Here, Officer
>Vidal simply did not perform as required. He knew he was not the arresting officer,
>and further, he knew none of the conduct of the Lewises should have resulted in
>arrest.

(Plaintiffs' Suggestions in Opposition to Defendant's Motion for Summary Judgment at 7-8)

Plaintiffs also allege that defendant Vidal is listed as the victim on the tickets, but that he did not believe himself to be the victim. (Id. at 6)

The Court has reviewed the deposition of defendant Vidal, as well as all the other evidence presented by the parties, and finds no support for plaintiffs' assertion that defendant Vidal "sign[ed] a ticket knowing it not to be true" or that defendant Vidal is listed as a victim on plaintiffs' tickets. While defendant Vidal was not the officer who actually made the decision to arrest the plaintiffs, he did not testify that he thought the arrests were improper. Further, he testified that he did not issue Tressia Lewis a citation for assaulting him because, "I figured it was sufficient to just arrest them for the hindering." (Deposition of John Vidal at 46) "Parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 111 (8th Cir. 1997). Defendant Vidal is entitled to summary judgment on plaintiffs' claims of unconstitutional arrest.

Since plaintiffs cannot establish a claim for false arrest, they may not maintain a cause of

14

action for conspiracy to commit unconstitutional arrest. See Curley v. Village of Suffern, 268 F.3d 65, 72 (2nd Cir. 2001). Defendant Vidal is, therefore, also entitled to summary judgment on plaintiffs' claims of conspiracy to commit unconstitutional arrest.

      B.      <u>Excessive Use of Force and Conspiracy to Use Excessive Force</u>

Plaintiffs next claim that defendant Vidal used excessive force and conspired to use excessive force in arresting plaintiffs and taking them into custody. Plaintiffs allege that being pushed and sprayed with a mace spray was not reasonably necessary to effect their arrest.

In Crumley v. City of St. Paul, 324 F.3d 1003 (8th Cir. 2003), the Eighth Circuit Court of Appeals set forth the following discussion regarding a claim of excessive use of force:

> "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person. Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998). The violation of this right will, of course, support a § 1983 action. E.g., id. "Fourth Amendment jurisprudence has long recognized [however] that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 ... (1989). Therefore, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).
>
> The force employed by an officer is not excessive and thus not violative of the Fourth Amendment if it was "objectively reasonable under the particular circumstances." Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. at 396-97 ... "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." Foster v. Metro. Airports Com'n, 914 F.2d 1076, 1082 (8th Cir. 1990).
>
>                                                       * * *
>
> In addition to the circumstances surrounding the use of force, we may also

consider the result of the force. Foster, 914 F.2d at 1082 ("We do not believe that ... allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support [a] claim of excessive force"); Greiner, 27 F.3d at 1355 (reasoning the lack, or minor degree, of any injury is also relevant in determining the reasonableness of the force used to effect an arrest, and holding the district court correctly held officers were protected from the plaintiffs' § 1983 claims by the doctrine of qualified immunity).

324 F.3d at 1007.

In light of the undisputed material facts set forth above, the Court concludes that no reasonable jury could find that defendant Vidal used excessive force by spraying each of the plaintiffs one time with pepper spray. The situation depicted in the video tapes presented to the Court shows circumstances that are tense, uncertain, and rapidly evolving. The following facts are before the Court:

1. Plaintiffs followed Nicole Lewis and the officers to the back of the paddy wagon as the officers attempted to place Nicole into the wagon, even after being told repeatedly by Officer DeFreece to "step back," and while Officer DeFreece held up his hand and motioned for them to move away from the area. (See Fact #21, supra)

2. Defendant came upon the back of the paddy wagon at the time that officers were attempting to place an uncooperative Nicole Lewis into the wagon. (See Fact #25, supra)

3. Defendant saw plaintiffs at the back of the paddy wagon, in close proximity to Nicole Lewis and the officers arresting her. (See Fact #26, supra)

4. Plaintiff Tressia Lewis was within touching distance of Nicole Lewis and the officers arresting Nicole. (See Fact #27, supra)

5. Plaintiff Leonard Lewis was within five to eight feet of Nicole Lewis and officers arresting Nicole. (See Fact #28, supra)

6. Defendant heard both plaintiffs yelling or talking loudly. (See Fact #32, supra)

7. Defendant heard other officers on the scene telling plaintiffs to get back away from Nicole Lewis and the officers arresting her. (See Fact #33, supra)

16

8. Officer DeFreece repeatedly told plaintiffs to "step back" and held up his hand and motioned for them to back away on numerous occasions. (See Fact #34, supra)

9. Officer Gooch, who drove the paddy wagon, told plaintiffs that they were hindering the officers' attempts to control Nicole Lewis and get Nicole in the wagon. (See Fact #35, supra)

10. Another officer, possibly DeFreece, told defendant to "get these people back." (See Fact #36, supra)

11. Defendant physically positioned himself between plaintiffs and Nicole Lewis and the officers arresting Nicole. (See Fact #11, supra)

12. Defendant told plaintiffs to "get back" approximately four times before plaintiffs took a few steps back. (See Fact #38, supra)

13. Defendant held up his hand, pointing and motioning to plaintiffs to back up onto a porch, when plaintiff Tressia Lewis slapped defendant's hand. (See Fact #39, supra)

14. Defendant continued telling plaintiffs to "get back" or "back up" away from the scene as he sprayed plaintiffs one time with pepper spray. (See Fact #42, supra)

15. Having persons so close to an arrest scene is potentially dangerous because the officers arresting Nicole Lewis could not watch plaintiffs and Nicole at the same time; it is not normal or safe for persons to walk so closely behind an officer if the officer is taking someone into custody; the arresting officer's hands are occupied with his arrest; and the persons following behind the officer could reach out for the officer's duty weapon, or try to get into the paddy wagon, where a shotgun is stored. (See Fact #46, supra)

16. After defendant sprayed plaintiffs with pepper spray, Officer DeFreece told plaintiffs that they "interfered with our arrest." (See Fact #50, supra)

The Court finds that defendant Vidal's use of the pepper spray was a reasonable use of force given the plaintiffs' repeated failure to follow the officers' directions to step back and the possibility that the situation was escalating when plaintiff Tressia Lewis slapped defendant's hand, and no juror could reasonably find otherwise.

17

Further, the facts before the Court show that the force used by defendant Vidal did not produce any lasting injury to plaintiff Tressia Lewis and only a minor injury to plaintiff Leonard Lewis:[21]

1. Neither plaintiff suffered permanent physical injury as a result of being sprayed one time with pepper spray. (See Fact #60, supra)

2. Neither plaintiff sought medical treatment as a result of being sprayed with pepper spray. (See Fact #61, supra)

3. Plaintiff Tressia Lewis suffered no physical pain, or physical injury such as bruising, when defendant allegedly touched her abdomen. (See Fact #62, supra)

4. Plaintiff Tressia Lewis did not seek medical care as a result of defendant touching her. (See Fact #63, supra)

5. Neither plaintiff sought counseling by a professional counselor as a result of the incident. (See Fact #64, supra)

6. Neither plaintiff has attempted to obtain treatment, or make an appointment with a professional, for their alleged mental harm. (See Fact #65, supra)

7. Plaintiff Leonard Lewis does claim to have hair loss (alopecia) allegedly as a result of the stress associated with his arrest, saw his family doctor one time regarding the hair loss, and was given a prescription medication for the hair loss. (See Fact #66, supra)

8. Plaintiff Leonard Lewis suffers no physical pain as a result of the alopecia. (See Fact #67, supra)

9. The doctor treating plaintiff Leonard Lewis' hair loss did not recommend that Mr. Lewis see a specialist for counseling or stress. (See Fact #68, supra)

10. Leonard Lewis had no out of pocket expense for the doctor's visit, but did incur a $1 co-pay for the medication. (See Fact #69, supra)

---

[21] It appears that plaintiff Leonard Lewis' alleged injury was brought on by the stress of being arrested as opposed to any force used. However, for purposes of this motion, the Court assumes that the force used by defendant Vidal contributed to plaintiff's alleged injury of hair loss.

18

11. Plaintiff Tressia Lewis has never taken any type of medication as a result of the events of August 21, 2003. (See Fact #70, supra)

12. Both plaintiffs contend their handcuffs were tight, but neither sought medical treatment, or suffered lasting injury, as a result of being handcuffed. (See Fact #71, supra)

13. Neither plaintiff suffered bruises or scratches or visible injuries as a result of what occurred on August 21, 2003. (See Fact #72, supra)

The absence of any injury with respect to plaintiff Tressia Lewis and the degree of the injury allegedly suffered by plaintiff Leonard Lewis suggests to the Court that the force used by defendant Vidal was reasonable. Defendant Vidal is entitled to summary judgment on plaintiffs' claims of excessive use of force.

In the alternative, defendant Vidal is entitled to qualified immunity, and hence summary judgment on plaintiffs' claims of excessive use of force. As set forth above, defendant sprayed plaintiffs with pepper spray because despite plaintiffs being repeatedly instructed to step back, defendant did not believe that plaintiffs ever backed away far enough from the officers and Nicole for the arresting officers to do their job safely, and without distraction by plaintiffs. (See Fact No. 44, supra) Further, defendant believed that plaintiffs were becoming more hostile. (See Fact No. 41, supra) Even if defendant's beliefs were mistaken and the plaintiffs were merely trying to calm their daughter, the Court finds that an objective officer in defendant's position could reasonably believe that plaintiffs were not complying with the officers' instructions and that the situation was escalating. Because defendant's beliefs were reasonable, it was objectively reasonable for defendant to use the pepper spray. See Seiner v. Drenon, 304 F.3d 810, 813 (8th Cir. 2002)(where there is no genuine issue of material fact about whether a reasonable officer could have believed the use of force was lawful, defendant is entitled to qualified immunity").

19

Since plaintiffs cannot establish a claim for excessive use of force, they may not maintain a cause of action for conspiracy to use excessive force. See Curley v. Village of Suffern, 268 F.3d 65, 72 (2nd Cir. 2001). Defendant Vidal is, therefore, also entitled to summary judgment on plaintiffs' claims of conspiracy to use excessive force.

## IV. CONCLUSION

For the reasons discussed herein, it is

ORDERED that Defendant's Motion for Summary Judgment (doc #24) is granted.

/s/ Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE